**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STEFFANI PRATICO, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 17-cv-00899 |
| v. | ) ) | |
| VITAMIN SHOPPE, INC., a Delaware corporation, | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Steffani Pratico ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Defendant Vitamin Shoppe, Inc. ("VS" or "Defendant"), and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by counsel.

## NATURE OF THE ACTION

1.      This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Classes who purchased the dietary supplement St. John's Wort Extract (the "Product").

2.      "One of the fastest growing industries in the world is the nutritional supplement group, or more broadly known as Vitamins, Minerals and Supplements, or VMS. Producing about $32 billion in revenue for just nutritional supplements alone in 2012, it is projected to

double that by topping $60 billion in 2021 according to the Nutritional Business Journal."[1]

3.      In order to reap substantial profits from the sales of nutritional supplements, many companies, including VS, look to cut corners to keep manufacturing costs low for their products.

4.      VS formulated, manufactured, warranted, advertised and sold the Product throughout the United States, including in the State of Illinois and in this District.

5.      Unbeknownst to Plaintiff and the members of the Classes, who relied upon VS's Product labeling, the dietary supplement Product sold by VS did not contain consistent amounts of the sole active ingredient standardized extract hypericin listed on its label.

6.      Despite having knowledge that the Product's labeling is deceptive, misleading, and constitutes a fraud on consumers, VS continues to advertise, distribute, label, manufacture, market, and sell the Product in a false, misleading, unfair, and/or deceptive manner.

7.      As a result of VS's unlawful and deceptive conduct, Plaintiff and the Classes seek actual damages, injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.

## PARTIES

8.      During the Class period, Class members in Illinois and throughout the United States purchased the Product through VS's numerous brick and mortar and online retail stores. Plaintiff and Class members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices set forth in this Class Action Complaint.

9.      Plaintiff Steffani Pratico is a citizen of the State of Illinois. At relevant times to this matter, she resided, and continues to reside, in this judicial District. In October 2016,

---

[1] *Nutritional Supplements Flexing Muscles As Growth Industry*, FORBES, http://www.forbes.com/sites/davidlariviere/2013/04/18/nutritional-supplements-flexing-their-muscles-as-growth-industry/ (last visited on Feb. 3, 2017).

Plaintiff purchased VS's St. John's Wort Extract Product for her own use from a VS retail store in Chicago, Illinois for approximately $6.99.

10.    Vitamin Shoppe, Inc. is a Delaware corporation headquartered at 2101 91st Street, North Bergen, New Jersey. Vitamin Shoppe is a retailer of nutritional products and sports supplements as well as herbs, homeopathic remedies, and beauty aids. The company currently sells its products through more than 500 retail stores located in 38 states and in Puerto Rico, in addition to through the Internet.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the Classes are citizens of States other than the State in which VS is incorporated and has its principal place of business.

12.    Diversity jurisdiction exists because Plaintiff is a citizen of Illinois and VS is a citizen of Delaware and New Jersey.

13.    This Court has personal jurisdiction over VS because it conducts business in Illinois. VS has marketed, distributed, and sold the Product in Illinois. VS has sufficient minimum contacts with this State, and/or sufficiently avails itself to the markets of this State through its sales and marketing within this State to render the exercise of jurisdiction by this Court permissible.

14.    This Court has personal jurisdiction over VS because it has continuous and systematic contacts with Illinois. VS owns and operates dozens of retail stores in this District[2]

---

[2] *Store Locator*, THE VITAMIN SHOPPE, https://www.vitaminshoppe.com/sl/illinois (last visited Feb. 3, 2017).

and regularly sells its products to Illinois residents. VS conducts business throughout the United States, including in the State of Illinois and in this District.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Venue is also proper under 18 U.S.C. § 1965(a) because VS transacts substantial business in this District.

## FACTUAL ALLEGATIONS

16. VS labels and markets its St. John's Wort Product in such a deceptive and misleading manner that Plaintiff and Class members were deceived into purchasing a Product that failed to provide consistent amounts of the active ingredient standardized extract hypericin.

17. Health experts have long complained about the quality and safety of herbal supplements, which are exempt from the strict regulatory oversight applied to prescription and over-the-counter drugs. Putting aside questions as to the efficacy of these supplements, there have been longstanding questions as to whether they even contain the ingredients listed on their labels.

18. Although there is some regulatory framework under the Food, Drug and Cosmetic Act (the "FDCA") for herbal extracts, neither the FDCA nor the United States Food and Drug Administration have provided a legal or regulatory definition for "standardized" extracts. Indeed, the National Institutes of Health, Office of Dietary Supplements, has confirmed that "no legal or regulatory definition exists for standardization in the United States as it applies to botanical dietary supplements."[3]

---

[3] *Botanical Dietary Supplements*, NATIONAL INSTITUTES OF HEALTH, OFFICE OF DIETARY SUPPLEMENTS, http://ods.od.nih.gov/factsheets/BotanicalBackground-HealthProfessional/ (last visited Feb. 3, 2017).

19.     Despite this lack of oversight by any governmental authority, the purpose of standardizing an extract is well known, as stated by NOW Foods, a leading dietary supplement manufacturer:

> A standardized herbal extract is an herb extract that has one or more components present in a specific, guaranteed amount, usually expressed as a percentage. The intention behind the standardization of herbs is to guarantee that the consumer is getting a product in which the chemistry is consistent from batch to batch.[4]

20.     Although there is no legal or regulatory definition, scientific journals have found that "standardized guarantees the content of one or more active constituents and marker compounds."[5]

21.     When Plaintiff and Class members were shopping for a St. John's Wort product in the standardized form, they expected to receive the "guaranteed" amount listed on the label based upon the general understanding of "standardized." Unfortunately, this is not what has happened.

22.     Specifically, the front label of VS's St. John's Wort Product predominantly features "300mg 0.3% hypericin."

---

[4] *Whole Herbs vs. Standardized Herbal Extracts: Which is Better?*, NOW FOODS, https://www.nowfoods.com/now/nowledge/whole-herbs-vs-standardized-herbal-extracts-which-better (last visited Feb. 3, 2017).
[5] Garg, V., et al., *Facts about standardization of herbal medicine: a review*. Journal of Chinese Integrative Medicine, October 2012, Vol. 10, No. 10, 1077.



23.     On the back label of the Product under the Supplement Facts section, VS claims

that the Product has been "std. to 0.3% Hypericin, (0.9 mg)."[6]



---

[6] Std. refers to "standardized."

24.     After the consumer watchdog group ConsumerLab.com reported that VS's St. John's Wort Product contained low levels of hypericin,[7] Plaintiff's counsel had the Product tested and found that it contained even less hypericin than reported by ConsumerLab.com. ConsumerLab.com found that the Product contains between .036 mg and .11 mg of hypericin, or approximately 4%-12% of the label claim. Plaintiff's testing revealed that the Product contains .207 mg of hypericin, or 23% of label claim. *See* ChromaDex VS St. John's Wort Product Test Results, attached hereto as Exhibit A.

25.     Based on these test results, VS's claim that its St. John's Wort Product contains "std. to 0.3% Hypericin, 0.9 mg" is false, deceptive and misleading.

26.     St. John's Wort is promoted as an anti-depressant herb that is commonly used for its neurological effects.

27.     VS is fully aware that scientific literature has shown benefits with the Product, but at the lowest dosage of 0.9 mg per day, the exact amount claimed on the Product's label. Also, because VS is the manufacturer of the Product, it is fully aware that it manufactures the Product to contain less of the standardized extract than claimed on the label. Plaintiff, Class members, and a reasonable consumer would consider and use this information in making the decision regarding whether to purchase VS's St. John's Wort Product. However, VS purposely omitted this material fact, to the detriment of Plaintiff and other Class members.

28.     Plaintiff and other members of the Classes purchased and consumed the Product because they believed, based upon the misleading label, that it contained the standardized ingredient listed on the label and that the quantity of such ingredient was accurately stated on the Product's label.

---

[7] *St. John's Wort Supplements Review*, CONSUMERLAB.COM, https://www.consumerlab.com/reviews/ St_Johns_Wort/stjohnswort/ (last visited Feb. 3, 2017).

29.     Plaintiff and the other members of the Classes had a reasonable expectation that when purchasing VS's "standardized" St. John's Wort Product, they purchased a Product with precise amounts of "standardized" hypericin contained within the Product.

30.     Plaintiff and other members of the Classes would not have bought VS's St. John's Wort "Standardized" Extract Product if they had known that the Product had a significantly lower quantity of the standardized extract hypericin than was stated on the Product label.

31.     Plaintiff and Class members were in fact misled by VS's representations regarding the true nature of the hypericin content and value.

32.     The difference between the Product promised and the Product sold is significant. The amount of hypericin provided in VS's standardized St. John's Wort Standardized Extract dietary supplement has a real impact on the benefits provided to consumers by the Product, and the actual value of the Product itself.

33.     VS's deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food—including nutritional supplements—misbranded when the label contains a statement that is "false or misleading in any particular."

34.     The State of Illinois has expressly adopted the federal food labeling requirements as its own, and has indicated that "[t]he Director is authorized to make the regulations promulgated under this Act conform, in so far as practicable, with those promulgated under the Federal Act." 410 ILCS 620/21(a). Additionally, under Illinois law, "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21(j). Thus, a violation of federal food labeling laws is an independent violation of Illinois law and actionable as such.

35.     Further, as explained above, VS's claims are misleading to consumers in violation of 21 U.S.C. § 343, which states, "[a] food shall be deemed to be misbranded — (a) If (1) its labeling is false or misleading in any particular."

36.     The Illinois legislature has adopted the exact language of the FDCA in 410 ILCS 620/11 by stating, "[a] food is misbranded - (a) If its labeling is false or misleading in any particular."

37.     The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Class Action Complaint.

38.     Moreover, the Illinois Consumer Fraud Act and Deceptive Business Practices Act, which provides protection for consumers when purchasing products, including VS's St. John's Wort Product, expressly states that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful . . . ."

815 ILCS 505/2.

39.     Plaintiff and Class members would have purchased other St. John's Wort dietary supplements, if any at all, if they had not been deceived by the misleading and deceptive labeling of the Product by VS.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this class action lawsuit on behalf of herself and proposed Classes of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

41.     Plaintiff seeks certification of the following Classes:

**National Class:** All persons in the United States who purchased the Product.

**Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who purchased the Product.[8]

**Illinois Subclass:** All persons in the State of Illinois who purchased the Product.

Excluded from the Classes are VS and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

42.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

43.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiff, but may be ascertained from VS's books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

44.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which

---

[8] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 ILCS 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

predominate over any questions affecting only individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

   a) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

   b) Whether VS's actions violate the State consumer fraud statutes invoked below;

   c) Whether VS breached an express warranty to Plaintiff and members of the Classes; and

   d) Whether VS was unjustly enriched at the expense of the Plaintiff and members of the Classes.

45.     VS engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

46.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by VS in violation the laws as complained of herein. Further, the damages of each member of the Classes were caused directly by VS's wrongful conduct in violation of the laws as alleged herein.

47.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because she is a member of the Classes and her interests do not conflict with the interests of the other members of the Classes she seeks to represent. Plaintiff has also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiff and her counsel intend to prosecute this action vigorously

for the benefit of all members of the Classes. Accordingly, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

48.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** VS has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

49.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against VS, so it would be impracticable for members of the Classes to individually seek redress for VS's wrongful conduct. Even if members of the Classes could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

### COUNT I
### Violation of State Consumer Fraud Acts
### (On Behalf of the Consumer Fraud Multi-State Class)

50.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

51.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class[9] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

52.     VS intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

53.     As a result of the VS's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

54.     In addition, VS's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## <u>COUNT II</u>
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (In the Alternative to Count I and On Behalf of the Illinois Subclass)

55.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

56.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose. 815 ILCS 505/11a.

---

[9] California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois  (815 ILCS 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich.  Comp.  Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

57.    VS's conduct in representing the benefits of its St. John's Wort Product constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of VS's trade or commerce.

58.    VS intended that Plaintiff and each of the other members of the Illinois Subclass would rely on its representations. Through independent Product testing by ConsumerLab.com and Plaintiff's counsel, the Product has been shown not to contain the claimed amount of hypericin, and VS intended to profit upon this fact.

59.    This misrepresentation is material because it concerns the type of information upon which a reasonable consumer would be expected to rely upon in making a decision whether to purchase the Product.

60.    Because VS is in the business of selling dietary supplement products, VS committed unfair and deceptive acts in the conduct of its trade and commerce.

61.    VS's practice of misrepresenting the Product is also unfair because it offends public policy and is immoral, unethical, and unscrupulous. Illinois consumers are being misled about the very efficacy and purpose of the Product. Misrepresenting the Product offends the public's expectation to be told the truth about the products they are buying.

62.    Because the Product has no efficacy, the Product sold is worth less than the Product as represented, and Plaintiff and members of the Illinois Subclass paid a premium for the Product. Had the truth been known, Plaintiff and members of the Illinois Subclass would not have purchased the Product.

63.    Plaintiff and members of the Illinois Subclass were deceived by the labeling on the Product and suffered economic damages as a proximate result of VS's unlawful conduct as

alleged herein, including the difference between the actual value of the Product and the value of the Product if it had been as represented.

64.     Plaintiff also seeks to enjoin VS's ongoing deceptive practices relating to its claims on the Product's labels and advertising.

**COUNT III**
**Breach of Express Warranty**
**(On Behalf of the National Class)**

65.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

66.     Plaintiff, and each member of the National Class, formed a contract with VS at the time Plaintiff and the other members of the National Class purchased the Product. The terms of the contract included the promises and affirmations of fact made by VS on the Product's packaging and through marketing and advertising, as described above. This labeling, marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the National Class and VS.

67.     VS purports through its advertising, labeling, marketing and packaging to create an express warranty that the Product contained a "standardized" amount of hypericin, specifically "std. to 0.3% Hypericin, 0.9 mg."

68.     Plaintiff and members of the National Class performed all conditions precedent to VS's liability under this contract when they purchased the Products.

69.     VS breached express warranties about the Product and its qualities because VS's statements about the Product were false and the Product does not conform to VS's affirmations and promises described above.

70.     Pursuant to 810 ILCS 5/2-607(3)(a), on December 9, 2016, Plaintiff, on behalf of herself and the National Class, provided VS with sufficient notice of VS's breach of the express warranties provided on the label of its St. John's Wort dietary supplement Product. In particular, Plaintiff notified VS that its St. John's Wort Product contains substantially less hypericin than advertised on the Product label.

71.     By providing pre-suit notice, Plaintiff has effectively notified VS of the troublesome nature of her transaction within a reasonable time of discovering the breach.

72.     Despite providing the above notice to VS that its Product does not meet VS's warranties and in fact fails in many respects to perform consistent with the Product's representations, VS continues to hide the facts from consumers and fails to correct the material misrepresentations regarding defects of its Product. Rather, VS continues to market and sell the Product in a misleading and deceptive manner.

73.     Actual and/or constructive notice was duly given to VS of the breaches of these warranties, and VS has yet failed to cure.

74.     Plaintiff and each of the members of the National Class would not have purchased the Product had they known the true nature and quality of the Product.

75.     As a result of VS's breach of warranty, Plaintiff and each member of the National Class have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from their purchases.

## COUNT IV
### Unjust Enrichment
### (In the Alternative to Count III and on Behalf of the National Class)

76.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

77.     Plaintiff and the other members of the National Class conferred benefits on VS by purchasing the Product.

78.     VS has been unjustly enriched in retaining the revenues derived from Plaintiff's and the other members of the National Class's purchase of the Product. Retention of those monies under these circumstances is unjust and inequitable because VS's labeling of the Product was misleading to consumers, and caused injuries to Plaintiff and the other members of the National Class because they would have not purchased the Product if the true facts would have been known.

79.     Because VS's retention of the non-gratuitous benefits conferred on it by Plaintiff and the other members of the National Class is unjust and inequitable, VS must pay restitution to Plaintiff and the other members of the National Class for its unjust enrichment, as ordered by the Court.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully request that the Court enter judgment as follows:

A.     Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

B.     Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C.     Ordering Defendant to pay actual damages to Plaintiff and the other members of the Classes;

D.     Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Classes;

E.      Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes invoked above, to Plaintiff and the other members of the Classes;

F.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

G.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

H.      Leave to amend this Complaint to conform to the evidence presented at trial; and

I.      Ordering such other and further relief as may be just and proper.


Dated: February 3, 2017                         Respectfully submitted,

                                                By:  ___/s/ Michael L. Silverman_____
                                                        Michael L. Silverman

                                                Klint L. Bruno
                                                *kb@brunolawus.com*
                                                Michael L. Silverman
                                                *msilverman@brunolawus.com*
                                                **THE BRUNO FIRM**
                                                900 West Jackson Boulevard
                                                Suite 4E
                                                Chicago, Illinois 60607
                                                Phone: 773.969.6160

                                                Nick Suciu III
                                                *nicksuciu@bmslawyers.com*
                                                **BARBAT, MANSOUR & SUCIU PLLC**
                                                1644 Bracken Road
                                                Bloomfield Hills, Michigan 48302
                                                Phone: 313.303.3472

                                                ***Counsel For Plaintiff***
                                                ***And The Proposed Classes***